Constance Katz Golber & another[1] *vs.* BayBank Valley
Trust Company.

No. 96-P-1624.

Middlesex. February 6, 1998. - January 29, 1999.

Present: Greenberg, Lenk, & Beck, JJ.

*Negligence,* Bank, Standard of care. *Deceit. Fraud. Consumer Protection Act,*
Bank, Unfair or deceptive act, Attorney's fees.

The evidence at the trial of a claim of negligent misrepresentation brought
against a bank warranted the judge's instructions, which were correct, on
the defendant's duty to make a full, rather than fragmentary, disclosure of
material facts [257-259], and the evidence was sufficient to support the
jury's verdict in favor of the plaintiff on that claim [260].

In a civil action in which the jury found for the plaintiff on a claim of negligent
misrepresentation and for the defendant on a claim of fraud, there was no
error in the judge's adopting the jury's finding that the defendant's actions
were not knowing and wilful and declining to award multiple damages
under G. L. c. 93A for the defendant's unfair and deceptive practice.
[260-261]

Plaintiffs in a civil action were entitled to reasonable attorneys' fees incurred
in connection with their successful opposition to the defendant's appeal.
[261]

Civil action commenced in the Superior Court Department on
May 10, 1994.

The case was tried before *Catherine A. White,* J.

*Alice E. Zaft* for the defendant.

*Stanley W. Wheatley* for the plaintiffs.

Beck, J. Although there are essentially two parties in this ap-
peal, there were three participants in the underlying commercial
triangle. The now silent party was D & W Architectural
Woodworking Corporation (D & W), a troubled, but allegedly
venerable, enterprise which produced architectural woodwork-
ing, store and bank fixtures and shelving, and automated teller

---

[1]Moonglow Investors, Inc.

machine and other interactive environments. By November, 1992, the defendant, BayBank Valley Trust Company (BayBank or bank), had provided financial support to D & W in the form of notes and a line of credit totaling nearly $500,000. But D & W was in need of "additional growth capital." The plaintiffs, Constance Katz Golber, an experienced investor, and her investment company, Moonglow Investors, Inc. (Moonglow), appeared to be a likely source. She was familiar with the company because the president previously had been a partner of her husband in a consulting business. Golber had confidence in the president, as well as the company, and was prepared to lend the company $125,000. The loan was to be subordinated to BayBank's loans. Shortly after authorizing the March 15, 1993, transfer of $125,000 to D & W, Golber learned that the bank had not disclosed information regarding the status of D & W's account at the bank which she regarded as important to her decision to invest in D & W. A year later, after she had lost her entire investment, Golber and Moonglow brought suit against the bank claiming fraud (count I), negligent misrepresentation (count II), breach of the implied covenant of good faith and fair dealing (count III), and violation of G. L. c. 93A (count V). (They waived a claim of impairment of collateral [count IV].) The jury found for the defendant on counts I and III. The bank appeals from the jury's verdict for the plaintiffs on the negligent misrepresentation claim and from the judge's findings for the plaintiffs on the c. 93A claim. The plaintiffs cross-appeal from the judge's finding that the c. 93A violation was not wilful or knowing.

*Negligent misrepresentation.* As we have recently stated, "In order to recover for negligent misrepresentation . . . plaintiff[s] must prove that the defendant (1) in the course of his business, (2) supplie[d] false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance upon the information, and [that he] (6) . . . fail[ed] to exercise reasonable care or competence in obtaining or communicating the information. *Fox* v. *F & J Gattozzi Corp.*, 41 Mass. App. Ct. 581, 587-588 (1996). See Restatement (Second) of Torts § 552 (1977). A claim for negligent misrepresentation is ordinarily one for a jury, unless the undisputed facts are so clear as to permit only one conclusion. *Fox* v. *F & J Gattozzi Corp.*, 41 Mass. App. Ct. at 588." *Nota Constr. Corp.* v. *Keyes Assocs., Inc.*, 45 Mass. App. Ct. 15, 19-20 (1998).

The bank claims that it had no duty to disclose D & W's account status to Golber, absent a special relationship which it says did not exist here, and that the judge should have instructed accordingly, as the bank requested. In support of this claim, the bank cites *Wolf* v. *Prudential-Bache Secs., Inc.*, 41 Mass. App. Ct. 474, 477 (1996) (no duty to disclose general partner's fourteen year old convictions to prospective investors), and *Greenery Rehabilitation Group, Inc.* v. *Antaramian*, 36 Mass. App. Ct. 73, 77-78 (1994) (no duty of real estate seller to inform prospective buyer of key tenant's precarious financial circumstances). The defendant, arguing insufficient evidence, disputes the plaintiffs' assertions that the bank made any false representations; that Golber's reliance on any of the bank's representations was reasonable; that the bank's representations were material; and that any misrepresentations were the cause of Golber's losses.

As to the jury instruction, although "[t]he rule of nonliability for bare nondisclosure has been stated and followed" for years, see *Swinton* v. *Whitinsville Savs. Bank*, 311 Mass. 677, 679 (1942), that rule has long been tempered with an exception for "the uttering of a half truth which may be tantamount to a falsehood." *Id.* at 678. "Although there may be 'no duty imposed upon one party to a transaction to speak for the information of the other . . . if he does speak with reference to a given point of information, voluntarily or at the other's request, he is bound to speak honestly and to divulge all the material facts bearing upon the point that lie within his knowledge. Fragmentary information may be as misleading . . . as active misrepresentation, and half-truths may be as actionable as whole lies.' " *Kannavos* v. *Annino*, 356 Mass. 42, 48 (1969). These are the instructions the judge gave. While the judge enunciated the *Kannavos* standard regarding "half-truths" in her charge on deceit, she clearly incorporated that definition of "misrepresentations of fact" in her charge on negligent misrepresentation, which followed immediately thereafter. Moreover, the judge correctly articulated the defendant's duty in her charge on negligent misrepresentation, in which she stated, "A person who makes representations under circumstances where he knows that the person receiving the representations will be relying upon them, has a duty to exercise reasonable care in making the representations." See Restatement (Second) of Torts § 552 (1977); *Nycal Corp.* v. *KPMG Peat*

*Marwick LLP*, 426 Mass. 491, 495-498 (1998). The instructions were correct statements of the law, and, as shall be evident, the facts warranted their delivery.

*The facts.* On the negligent misrepresentation claim, in addition to the facts presented above, a jury could have found the following. Golber's family and its businesses had been clients of the bank for years. However, at about the same time that Golber was making plans for the loan to D & W, the bank asked the family to take its banking business elsewhere because of a dispute about an unrelated matter. Golber was concerned that her involvement with D & W would jeopardize D & W's relationship with the bank, which until then she regarded as constructive. In January or February, 1993, Golber asked the vice-president of the bank, who had been the family's account executive and with whom she was still on good terms, "to try to find out about" whether her involvement with D & W would undermine D & W's relationship with BayBank. Golber told the vice-president that her decision to invest in D & W despite its precarious fiscal condition rested in part on the "positive and good relationship" D & W had with its BayBank account officer, Gail Harris, because Golber "had confidence in that relationship." The vice-president responded that "he expected [Golber] would have the same positive relationship with Gail Harris that had been evidenced with [other key D & W players] in the previous years." Golber continued to express these concerns to the vice-president in February and early March, 1993. When Golber received the subordination agreement associated with the loan, which the bank's attorney had drafted for her March 15 signature, Gail Harris was the "duly authorized officer" who signed on behalf of the bank.

In fact, however, at a January 15, 1993, "watch list" meeting, BayBank had decided to transfer the D & W account to the "work out" or special loans division. Based on her previous experience with the bank, Golber described this division as a place for "criticized loans, difficult accounts . . . a place that would be very uncomfortable for customers." Moreover, the transfer meant that Gail Harris would no longer be the D & W account officer. The transfer authorization, which Gail Harris also signed, is dated March 3, 1993. On a number of occasions between January 21 and March 15, Golber, her lawyer, and the president of D & W each met or spoke with BayBank representatives about Golber's planned investment in D & W, but no

one at the bank ever told any of them of the transfer of the D & W account and the consequent change in account officer. Upon learning of the transfer, Golber told the new account officer she felt "[she] had been tricked." On April 15, 1993, one month after making her loan and more than four months before the bank foreclosed, Golber wrote to BayBank's president to "express [her] extreme displeasure" at BayBank's treatment and stating that she "would neither have loaned the money nor purchased the stock of D and W" if she had known about "the undisclosed workout status."

These facts are sufficient to support the jury's verdict. There was evidence the jury could have believed that at least one representative of the bank reassured Golber that Gail Harris would continue to supervise the D & W account, which reasonable investigation by the bank officer would have shown to be false; that Golber justifiably relied on the assurance; and that she would not have invested additional funds in the company had she known about the transfer of the account. While the bank may have had no obligation to volunteer the information about the status of D & W's account, and, indeed, it claims it is the bank's practice not to inform customers of transfers until they actually take place, once Golber expressed concern about the relationship with Gail Harris and the importance to her of that relationship, the bank was not at liberty to provide misleading information. See *Kannavos* v. *Annino*, 356 Mass. at 48. See also *Maxwell* v. *Ratcliffe*, 356 Mass. 560, 562-563 (1969) (in action for deceit "special obligation on the [real estate] brokers to avoid half truths and to make disclosure at least of any facts known to them or with respect to which they had been put on notice" when prospective buyers asked about whether cellar was dry, citing *Kannavos* v. *Annino*, *supra* at 46-50).

*General Laws c. 93A claim.* The trial judge found that the acts underlying the jury verdict on negligent misrepresentation constituted an unfair and deceptive practice in violation of c. 93A, but that the bank's actions were not knowing or wilful. She therefore declined to award multiple damages. The judge found that the jury's award of $125,000 in damages on the negligent misrepresentation claim reasonably compensated the plaintiffs for their c. 93A claim, and, in addition, awarded $102,225 in attorneys' fees and $7,278.85 in costs. The defendant claims that the judge's findings on the c. 93A claim were error, asserting that, absent a finding of intentional or wil-

ful misconduct, there can be no c. 93A violation. The plaintiffs claim error in the judge's failure to find a wilful or knowing violation of c. 93A, and her refusal to award multiple damages. Neither of these claims has any merit. As to the defendant's claim, we decided some years ago that "negligent misrepresentation of fact the truth of which is reasonably capable of ascertainment is an unfair and deceptive act or practice within the meaning of c. 93A, § 2(*a*)." *Glickman* v. *Brown*, 21 Mass. App. Ct. 229, 235 (1985). As to the plaintiffs' cross appeal, the judge adopted the jury's finding that the actions of the defendant were not knowing and wilful. This finding, she noted, was also supported by the jury's rejection of the plaintiffs' claims of fraud. There was therefore little basis for the judge to have awarded multiple damages. Her findings on this issue were not clearly erroneous. *Vassallo* v. *Baxter Healthcare Corp.*, 428 Mass. 1, 23 (1998).

*Conclusion and attorneys' fees.* The judgment is affirmed. Having requested an award of "reasonable attorneys' fees incurred in connection with this appeal" pursuant to G. L. c. 93A, § 11, the plaintiffs are entitled to reasonable attorneys' fees incurred in opposing the defendant's appeal, but not those fees arising from the plaintiffs' own unsuccessful cross appeal. See *Kapp* v. *Arbella Mut. Ins. Co.*, 426 Mass. 683, 687 (1998), citing *Bonofiglio* v. *Commercial Union Ins. Co.*, 412 Mass. 612, 614 (1992). The plaintiffs shall provide our clerk's office "the necessary back-up material and details as to hours spent, the precise nature of the work [excluding time spent on their cross appeal], and fees requested" within fifteen days of rescript. The defendant bank will be given fifteen days to respond. See *Yorke Mgmt.* v. *Castro*, 406 Mass. 17, 20 (1989); *A.B.* v. *C.D.*, 44 Mass. App. Ct. 331, 337 (1998).

*So ordered.*