RICHARD COLE *vs.* NEW ENGLAND MUTUAL LIFE INSURANCE
COMPANY & others.[1]

No. 98-P-1007.

Suffolk. February 23, 2000. - June 1, 2000.

Present: LAURENCE, SMITH, & GILLERMAN, JJ.

*Insurance,* Life insurance, Misrepresentation. *Contract,* Insurance, Misrepresentation. *Practice, Civil,* Summary judgment.

In a civil action tried in the Boston Municipal Court resulting in a judgment for the defendant, the plaintiff on appeal to the Superior Court submitted sufficient evidence of genuine issues of material fact to be tried to rebut the prima facie effect, under G. L. c. 231, § 102C, of the Municipal Court decision; the case was remanded to the Superior Court for further proceedings. [298-300]

CIVIL ACTION commenced in the Superior Court Department on July 11, 1995.

The case was heard by *Peter M. Lauriat,* J., on a motion for summary judgment.

*Leonard M. Davidson* for the plaintiff.

*Richard W. Jensen* for the defendants.

GILLERMAN, J. After a judge of the Boston Municipal Court found for the defendants on all counts of the complaint, the plaintiff, having satisfied all the procedural requirements of G. L. c. 231, § 103, appealed to the Superior Court. A judge of the Superior Court, after reviewing the submissions of the parties, including the transcript of the evidence in the Boston Municipal Court trial, allowed the defendants' motion for summary judgment on all counts. The plaintiff has appealed to this court claiming that the award of summary judgment against him was erroneous because he had produced sufficient evidence in opposition to the motion for summary judgment to raise genuine

[1]Julia H. Donahue; Wilson, Bergstrom and Denton; and John Bergstrom.

issues of material fact and to rebut the defendants' prima facie case.

At issue in this case is the plaintiff's claim that on August 5, 1988, he purchased a life insurance policy issued by New England Mutual Life Insurance Company (NEMLI), and paid premiums thereon, as a result of NEMLI'S alleged negligent misrepresentations.[2]

Under G. L. c. 231, § 102C, the decision of the Boston Municipal Court after transfer to the Superior Court is "prima facie evidence upon such matters as are put in issue by the pleadings." Unless the prima facie evidence is rebutted by evidence to the contrary, a verdict for the prevailing party at the trial in the Boston Municipal Court (or in any other District Court) is required as matter of law. *Forrey* v. *Dedham Taxi, Inc.*, 19 Mass. App. Ct. 955, 955 (1985).

It is also the plaintiff's burden in this case, as the nonmoving party, to show, through his submissions, specific facts that demonstrate that there is a genuine issue for trial. See *Geller* v. *Allied-Lyons PLC*, 42 Mass. App. Ct. 120, 125 n.8 (1997). The plaintiff's brief states that his opposition to the defendants' motion for summary judgment is based on the plaintiff's affidavit and the transcript of the trial in the Boston Municipal Court, consisting of 302 pages.[3] We emphasize that we are not obliged to read the entire transcript in search of testimony that may support arguments in the brief. See Mass.R.A.P. 16(e), as amended, 378 Mass. 940 (1979) ("[n]o statement of a fact of the case shall be made in any part of the brief without an appropriate and accurate record reference"). We turn, then, to the plaintiff's affidavit and the references to the trial transcript designated by the plaintiff in support of his claim of negligent misrepresentation. See note 2, *supra*.

---

[2]The complaint was brought in seven counts including G. L. c. 93A, fraud, breach of contract, and misrepresentation. In his reply brief, the plaintiff states that "Cole has not made a claim of fraud, but rather of negligent misrepresentation." We accept that characterization of Cole's claim (aside from any 93A claim) and discuss his claim on that basis.

[3]The plaintiff filed an opposition to the defendants' motion for summary judgment. That document states that the opposition is based on the plaintiff's affidavit and a memorandum of law. No mention is made of the transcript of the trial in the Boston Municipal Court, and the judge in the Superior Court was not obliged to consider the transcript. Nevertheless he did so, and the entire transcript is before us. In these circumstances, and as indicated in the text, we will consider those portions of the transcript to which our attention is directed.

1. *The plaintiff's affidavit.* This document, which consists of six paragraphs covering one and one-half pages, consists entirely of conclusory statements and has no probative value. We discuss it no further.

2. *The trial testimony.* The plaintiff testified at the trial in the Boston Municipal Court that NEMLI agreed to sell him a policy that conformed to an illustration presented to him on May 26, 1988. See note 4, *infra.* As the party opposing the motion for summary judgment, the plaintiff's testimony as to facts is accepted as true, and we give the plaintiff any favorable inferences reasonably drawn from those facts. See *Lindsay* v. *Romano*, 427 Mass. 771 (1998); *O'Gorman* v. *Rubinaccio & Sons*, 408 Mass. 758, 759 (1990); *Welford* v. *Nobrega*, 30 Mass. App. Ct. 92, 94 (1991). Thus, we start from the premise that we may infer from the conversation between the plaintiff and NEMLI's representatives that NEMLI did agree to sell the plaintiff a policy that would conform to the illustration presented to the plaintiff by NEMLI's representatives.[4,5]

The difficulties with the performance of NEMLI'S agreement to provide a policy that would conform to the illustration are two-fold. First, NEMLI'S representative acknowledged at the trial that the plaintiff's age on the illustration was incorrectly stated to be 53, and the table of cash values were on the basis of plaintiff being 53. See note 5, *supra.* In fact the plaintiff's age was 54 (as the policy correctly stated), and the premiums paid by the plaintiff were calculated on that basis. Some time in 1991 (the date is not revealed in the record), the plaintiff discovered a discrepancy between the cash values appearing in the illustration and the reports of cash values he had received from NEMLI. It was estimated that after ten years into the

---

[4]On direct examination the plaintiff was asked, "What did you do after the May 26 illustration with respect to the policy?" The plaintiff testified, "I told [NEMLI's representative] that I would like this insurance," and NEMLI's representative then said "she would get it."

[5]The three-page illustration is reproduced in the defendant's supplemental appendix. The illustration shows the plaintiff's age as 53; the annual, level premium of $16,500 for a one million dollar universal life insurance policy; and the buildup of the cash value of the policy: first, with the guaranteed rate of interest at 4.50% and second, with the current rate of interest at 9.00%. Notes to the illustrated numbers state the various assumptions, including the following: "Each premium is credited with interest at the Company's current rate. The rate for the policy reflects the weighted average of the rate on each premium. A portion of the cash value is reinvested at the end of each year at the then current rate."

policy (but keeping all other variables constant), the difference in cash value would be $10,000 since, at age 54, the cost of the plaintiff's insurance was higher than he was led to believe on the basis of the illustration which assumed age 53. This increased cost of insurance produced a material, unfavorable deviation from the projections of cash value appearing on the illustration.

The second difficulty had to do with the payment of premiums. The plaintiff testified that NEMLI'S representative never explained that the method of paying premiums (monthly or annually) would affect the cash value of the policy. A representative of NEMLI testified that the method of payment was not discussed with the plaintiff and that the method of payment affected cash values and did so "significantly." Indeed, he acknowledged that "as time goes on the significance becomes greater. . . [and] the gap widens." The illustration showed tables of cash values over time based on various assumptions; the policy did not show cash values. The illustration showed a "planned *annual* premium" (emphasis added) in spite of the fact that the plaintiff told NEMLI's representative that he wanted to pay premiums on a *monthly* basis. The plaintiff, without objection, testified that in 1991 he discovered that — while interest rates were rising — the cash value of the plaintiff's policy was approximately $6,000 to $7,000 less than what had appeared in the illustration.[6] Finally, at the trial, NEMLI's representative acknowledged that NEMLI intended clients to rely on the information set forth in the illustrations.

The defendants respond that the illustration bears the legend, "This is an illustration, not a contract." The statement, while certainly true, is beside the point. The foundation of the complaint is that NEMLI agreed to provide a policy that conformed to the May 26 illustration. The claim is that that policy did not conform as agreed upon. The plaintiff makes no claim that the illustration was the contract between the parties.

The defendants also respond that the policy bears a legend which states that the owner has the right to return the policy within ten days after the policy is received from the company. However, the plaintiff's complaint is that NEMLI did not

[6]NEMLI argues that the plaintiff received year-end statements of cash values and made no objection. However, those year-end statements failed to bring to the attention of the plaintiff that the cash values on the statements were less than the cash values shown on the illustration.

disclose to him that the policy did not conform to the illustration, and he did not discover the discrepancy until 1991. It was the alleged concealment by NEMLI that prevented the plaintiff from returning the policy within ten days.

Massachusetts recognizes the doctrine of negligent misrepresentation. See *Golber* v. *BayBank Valley Trust Co.*, 46 Mass. App. Ct. 256, 257 (1999). See also Restatement (Second) of Torts § 552 (1977). In such cases the plaintiff must show that the defendant, in the course of his business, supplied false information for the guidance of another upon which the plaintiff justifiably relied to his financial detriment and that the defendant failed to exercise reasonable care or competence in obtaining or communicating the information. *Ibid.* In this case, as described above, the falsity of information consisted of the failure "to divulge all the material facts bearing upon the points that lie within [the defendant's] knowledge. . . . [H]alf truths may be as actionable as whole lies." *Kanavos* v. *Annino*, 356 Mass. 42, 48 (1969). We also point out that the claim of negligent misrepresentation "is ordinarily one for the jury." *Golber, supra* at 257.

In sum, the plaintiff has rebutted the defendants' prima facie case, see *Forrey* v. *Dedham Taxi, Inc.*, 19 Mass. App. Ct. at 955, and he has demonstrated that there are genuine issues of material fact which must be tried.

The judgment is reversed, and the case remanded to the Superior Court for further proceedings.

*So ordered.*