790 A.2d 936

OLGA GARCIA, PLAINTIFF–APPELLANT, v. L&R REALTY, INC., DEFENDANT–RESPONDENT, AND BUDGET RENT A CAR CORPORATION, DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued December 18, 2001—Decided February 7, 2002.

Before Judges PRESSLER,[1] WEFING and LANDAU.

*Robert J. Stack* argued the cause for appellant Olga Garcia (*Scura, Mealey & Scura*, attorneys; *Mr. Stack* on the brief).

[1] Judge Pressler did not originally participate in this case, but has, with the consent of counsel, been added to the panel deciding the matter.

*Vincent P. Trovini* argued the cause for respondent L & R Rental, Inc. (*Mr. Trovini*, of counsel and on the brief).

The opinion of the court was delivered by

LANDAU, J.A.D.

Plaintiff Olga Garcia appeals from part of a final order of judgment entered in the Law Division, Special Civil Part, following a bench trial on her complaint filed against "Budget Car & Truck Rental" (Budget)[2] and respondent-defendant L & R Rental, Inc. (L & R) a foreign corporation. The complaint contained the following counts: consumer fraud under *N.J.S.A.* 56:8–2; unlawful practice under *N.J.S.A.* 56:8–2.22; negligent misrepresentation; common-law fraud; and breach of contract. Treble damages and counsel fees were demanded under the New Jersey Consumer Fraud Act counts.

After hearing the proofs, the judge confirmed his preliminary view that the facts presented required application of Massachusetts law. Chapter 93A of the Massachusetts Statutes, regulating business practices for consumer protection, was addressed by counsel during summation and upon plaintiff's motion for reconsideration.

The judge concluded that there was "carelessness" on the part of defendant but no animus or intentional misconduct. Construing the Massachusetts statute to require such intent in order to establish a statutory violation, he ruled that it was not violated and that no award of attorney's fees could be made under Chapter 93A. Nonetheless, based upon his findings that the defendant's actions were improper, unreasonable, and in violation of a duty to correctly inform plaintiff to return the car to a specific Massachusetts location and the consequences associated with its return to another Budget location, the judge entered judgment for plaintiff in the amount of $600.52. This primarily represented return of

---

[2] Respondent refers to Budget as "Budget Rent A Car Corporation." The judgment under review affects only respondent L & R Rental, Inc.

the additional drop-off surcharges that had been made by L & R against plaintiff's credit card. Plaintiff's motion for reconsideration was denied.

On appeal, plaintiff contends that the court erred in ruling that defendant's actions did not violate the consumer protections afforded by Chapter 93A of the Massachusetts Statutes. In consequence, she also urges that it was error to deny an award of counsel fees. The amount of the money award is not otherwise placed in dispute by either party in this appeal.

Based upon acceptance of the trial judge's factual findings, which are reasonably supported by the record, and our reading of Gen. Laws Ann. ch. 93A, §§ 2 and 11, as interpreted by Massachusetts case law, we hold that defendant did violate the Massachusetts statute and that a remedial award of counsel fees allowed by Chapter 93A should have been provided under R. 4:42-9(a)(8).

### The Factual Background

Plaintiff had attended a two-week training seminar in Massachusetts. On the last day of that schooling, she rented a car from the local Budget franchisee, L & R, arranging by telephone for its delivery to her hotel.

The parties differed widely as to the content of that telephone discussion. Plaintiff said she told respondent's manager that she needed a car for one-way travel to a New Jersey drop-off point, and that she believed she was dealing with Budget, a nationwide company. Michael Ferris, respondent's manager, said he was told that the car was for local use, and that he quoted a $34.95 daily rate based upon that understanding. The manager explained during trial that the Ford Escort rented by plaintiff was owned by L & R, that the only cars used for out-of-state drop-off are those owned by Budget, the franchisor, and that a much higher daily rate is charged in such cases. There is nothing of record to indicate that this difference in ownership of rental cars and its consequent effect was explained to plaintiff. Ferris testified that, pursuant to the rental agreement, plaintiff's credit card was

charged for an unauthorized drop-off. According to the manager, two L & R employees had to drive to the Budget office at Newark Airport in order to secure return of the L & R vehicle.

Plaintiff testified that a woman "from Budget" arrived at her hotel with the rental car and asked her questions, the answers to which were filled in by the woman on the Budget rental contract plaintiff was required to sign. It was undisputed that the contract, as signed, did not state that the car had to be returned to 311 Lowell Street, Andover, Massachusetts, and that plaintiff did tell the person who filled out the contract that she was going to return the car at Newark Airport. Neither does the record show that plaintiff was informed before she returned the vehicle that an additional charge of up to $1000 would be imposed for failure to return the car to the L & R office in Massachusetts. It was undisputed that "Madeleine," the woman who delivered the car, returned to the L & R office with two copies of the triplicate contract form after the contract was signed by plaintiff, and that Ferris then unilaterally filled in the return location section on the two L & R copies, adding "311 Lowell Street, Andover, Mass. 11/20/99" above the place where plaintiff had previously signed the agreement without a specified return location.

A dispute arose after plaintiff returned the car to the Budget office at Newark Airport. Her credit card was charged $690. When plaintiff's efforts to adjust the matter failed, the present action was commenced.

### The Legal Issues

Neither party disputes the applicability of Massachusetts substantive law in this case. At issue is whether the trial judge correctly decided that the facts he found were insufficient to present a violation of Mass. Gen. Laws Ann., ch. 93A, §§ 2 and 11 (1997), and that, in consequence, there was no basis for an award of the counsel fees requested by plaintiff.

We begin our analysis by noting that enforcement of the Massachusetts Statute is not offensive to public policy of New

Jersey which, while not congruent, also affords broad relief to consumers. *See, e.g., N.J.S.A.* 56:8–2; 8–2.22; *Pennhurst State School v. Estate of Goodhartz,* 42 *N.J.* 266, 271, 200 *A.*2d 112 (1964); *Terenzio v. Nelson,* 107 *N.J.Super.* 223, 228–29, 258 *A.*2d 20 (App.Div.1969).

 Matters of practice and procedure, of course, must be considered under the law of the forum state. *R.* 4:42–9(a)(8) allows for the shifting of attorney's fees when permitted by a statute. Thus, if Chapter 93A was violated on the facts found by the trial judge, even if those facts do not warrant the doubling or trebling of plaintiff's damages under the Massachusetts law, fees should be allowed in this case to the extent required by Chapter 93A.

The rejection of plaintiff's request for attorney's fees was explained in the oral decisions rendered following trial and after the motion for reconsideration. The judge believed that the Massachusetts Statute requires "some kind of animus." He found that respondent's agent Madeleine "obviously made a mistake" and that the contract, when signed by plaintiff, did not indicate "where the car had to come back to. . . ." The judge also found that Ferris, respondent's manager, had demanded in the telephone conversation initiated by plaintiff that she return the car to Massachusetts or "[i]t could cost you up to $1,000."

While recognizing plaintiff's candid admission that the $34.95 price was less than she might have expected, the judge found that she was not being dishonest, that respondent should have given her "a contract that's complete," and that "[a]nybody would be outraged . . . would feel like they were being put upon when they go to return a car [and] . . . somebody tells you you're going to- you're going to have $600 or $1000 . . . added to your credit card. . . ." The judge further found that ". . . we have carelessness here. No question about it. Unfair to the plaintiff, yes." However, he found ". . . that's not the unfairness that . . . they're talking about in-in Massachusetts or in New Jersey," and that

absent an intent to defraud, the Massachusetts act was not violated.

Attorney's fees were denied on that basis.

As noted above, plaintiff's testimony that she told Madeleine that the car was going to be returned in Newark was undisputed. Further, Ferris admitted that he unilaterally inserted a Massachusetts place of return above plaintiff's signature on the company's contract forms after she signed, and without her knowledge or consent. Moreover, neither contract form provided to this court contains an entry in the "return location charge" box.

What appears to have furnished the basis for the judge's award of damages was respondent's failure to communicate to the plaintiff the extent and amount of charges which would be imposed for a Newark drop-off. Plaintiff does not challenge on appeal the judge's conclusions respecting absence of intent or animus. We need not dwell, therefore, upon the effect of the post-signature insertion of the Massachusetts drop-off language after Madeleine returned to the office except to note that it does evidence a knowing unilateral action taken by respondent's manager after the "careless" and "unfair" omission of either a designated return location or the extent of alternate return location charges in the contract signed by plaintiff. Ferris does not dispute that he subsequently demanded return of the car to Massachusetts on pain of the imposition of additional charges up to $1000.

We hold that Chapter 93A was violated by respondent's "careless" [i.e. negligent] breach of its duty to notify its customer that the car had to be returned to Andover, Massachusetts, resulting in respondent's imposition of over $600 in surcharges after plaintiff returned the car to Budget's Newark Airport office. In so holding, we have also considered respondent's post-signature insertion of the Massachusetts drop-off location and the necessity for plaintiff to institute litigation in order to recover the inadequately communicated surcharges.

In reaching our conclusion, we have considered the Massachusetts statute and interpretive case law.

Section 11 of Chapter 93A provides, in pertinent part:

Any person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by section two ... [may] bring an action in the superior court ... for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper.... If the court finds in any action commenced hereunder, that there has been a violation of section two, the petitioner shall, in addition to other relief provided for by this section and irrespective of the amount in controversy, be awarded reasonable attorneys' fees and costs incurred in said action.

Section 2 of Chapter 93A, referred to in the above quoted portions of Section 11, provides, in pertinent part that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Thus, under Section 11 of Chapter 93A, if a court finds that Section 2 was violated, irrespective of the amount in controversy, a petitioner *shall* be awarded reasonable attorney's fees and costs incurred in the action. In *Golber v. BayBank Valley Trust Co.*, 46 *Mass.App.Ct.* 256, 704 *N.E.*2d 1191, 1194 (1999), the court unequivocally rejected defendant's argument that, absent a finding of intentional or willful misconduct, there can be no Chapter 93A violation. In doing so, it cited *Glickman v. Brown*, 21 *Mass.App. Ct.* 229, 486 *N.E.*2d 737 (Mass.App.Ct.1985). The *Golber* court made clear that the issue of knowing and willful conduct was relevant only to whether there was a basis for awarding multiple (*i.e.*, double or treble) damages under 93A. *Id.* at 1194. Citing Chapter 93A, Section 11, *Golber* held that the successful plaintiffs were entitled to an award of "reasonable" attorneys' fees. *Ibid.*

As enunciated in *Glickman,* liability under § 2 of Chapter 93A is determined by analysis of the circumstances and facts of each case to determine whether the practice in question is " 'within any recognized conception of unfairness ...' " or " 'causes substantial injury to consumers ...' " *Glickman, supra,* 486 *N.E.*2d at 741. (*Quoting PMP Associates, Inc. v. Globe Newspa-*

*per Co.*, 366 *Mass.* 593, 321 *N.E.*2d 915, 918 (1975)). The facts found in this case meet the *Glickman* test.

We recognize that, on appeal, respondent raises issues of lack of reliance by plaintiff on any negligent acts by the agents. It recites the elements of negligent misrepresentation set forth in *Golber*, 704 *N.E.*2d at 1192. The *Golber* opinion makes clear, however, that those are the elements of common-law negligent misrepresentation in Massachusetts. *Ibid.* The elements include "justifiable reliance." However, this issue was considered in *International Fidelity Ins. Co. v. Wilson*, 387 *Mass.* 841, 443 *N.E.*2d 1308, 1314 (1983), in which the Supreme Judicial Court held that the proof of actual reliance is not necessary under Chapter 93A. "What the plaintiff must show is a causal connection between the deception and the loss and that the loss was foreseeable as a result of the deception." *Ibid.*

Even if reliance is considered a necessary element, however, the factual findings made by the trial judge create a necessary inference of reliance. The judge made clear that whatever the "misunderstanding" between the parties, plaintiff was properly "outraged" by the amount of charges imposed against her credit card and without her prior knowledge. It is obvious that had the amount of those charges been communicated when plaintiff advised Madeleine of the Newark drop-off, plaintiff's decision to drive to New Jersey rather than use her airline ticket would, at the very least, have been reconsidered. So, too, had the requisite drop-off point been contained in the contract.

Respondent's actions, characterized as unfair but not intentional by the court, unquestionably caused a consumer injury that was not remedied until plaintiff brought her action. The practices have the potential to cause similar injury to other consumers, particularly because respondent's use of Budget's franchise name conveys to consumers the impression that they are dealing with a national company with offices throughout the country. Absent proper communication, it would not be wholly unreasonable for a consumer to believe that a $34.95 daily rate plus the gasoline and

mileage charges imposed for a 250 mile trip, while a bargain, might be Budget's charge for a car to be returned to its Newark Airport office where it could be rerented.

We recognize that Chapter 93A is not wholly congruent with the New Jersey Consumer Fraud Act, particularly respecting the necessity for intent to injure in certain cases. *See, e.g., Cox v. Sears Roebuck & Co.*, 138 *N.J.* 2, 17–18, 647 *A.*2d 454 (1994). Unlike Massachusetts, all violations of the New Jersey statute that result in an ascertainable loss carry with them the mandatory punitive trebling of damages, together with attorneys's fees. In Massachusetts, Chapter 93A can be violated without intent or animus, resulting in compensatory damages *with* attorneys' fees. *Golber, supra, Glickman, supra.* As previously noted, our enforcement of Chapter 93A is consistent with New Jersey's strong pro-consumer policies. Most recently, we recognized in *Scibek v. Longette*, 339 *N.J.Super.* 72, 78, 770 *A.*2d 1242 (App.Div.2001), that consumer fraud laws must be liberally construed in favor of the consumer, and that the legislative concern is for the victimized consumer, not the occasionally victimized seller.

Massachusetts law requires the award of attorneys' fees for Chapter 93A violations, irrespective of animus. Accordingly, we must reverse the portion of the order under review that denied attorneys' fees. We remand for the trial court to consider reasonable attorneys' fees under *R.* 4:42–9(a)(8).

On remand, the judge should consider that the purpose of a fee-shifting provision in a consumer statute is to "ensure that plaintiffs with bona fide claims are able to find lawyers to represent them." *Coleman v. Fiore Bros., Inc.*, 113 *N.J.* 594, 598, 552 *A.*2d 141 (1989). Chapter 93A provides that the attorneys' fee must be reasonable but that it should not be limited by the amount of damages. Our case law is not to the contrary.

In establishing a reasonable attorney's fee, a court may take into account the amount in controversy as one factor, but the starting point should be the "lode star" approach that consid-

ers the amount of hours reasonably expended times a reasonable hourly rate. *Chattin v. Cape May Greene, Inc.,* 243 *N.J.Super.* 590, 610–617, 581 *A.*2d 91 (App.Div.1990); aff'd o.b. 124 *N.J.* 520, 591 *A.*2d 943 (1991). *See also GMAC v. Jankowitz,* 230 *N.J.Super.* 555, 561–62, 553 *A.*2d 1380 (App.Div.1989) (setting forth considerations for exercise of judicial discretion under *R.* 4:42–9(a)(8) and 9(b) in awarding attorneys' fees allowed under a federal statute.) As observed by the Supreme Court, "[t]he fundamental remedial purpose of the [Consumer] Act dictates that plaintiffs should be able to pursue consumer-fraud actions without experiencing financial hardship." *Cox, supra,* 138 *N.J.* at 24–25, 647 *A.*2d 454.

The order under review is reversed solely as to the denial of attorneys' fees, and remanded to enable the trial judge to fix appropriate attorneys' fees under the above standards.