**Richard A. DAYNARD, Plaintiff,**

v.

**NESS, MOTLEY, LOADHOLT, RICHARDSON & POOLE, P.A.; Ronald Motley; Scruggs, Millette, Bozeman & Dent, P.A.; and Richard F. Scruggs, Defendant–Plaintiffs,**

v.

**Castano Plaintiffs Legal Committee a/k/a Castano Group; William Baggett; Baggett, McCall & Burgess; Jack M. Bailey, Jr.; Law Offices of Jack M. Bailey, Jr.; Scott Baldwin; Baldwin, Baldwin & Baldwin; Daniel**

---

E. Becnel; Landry & Becnel; Raul Bencomo; Bencomo, Bencomo & Associates; Terry P. Bottinelli Hertin, Burstein, Sheridan, et. al.; Martis Ann Brachtl; Goodkind, Labaton, Rudoff & Sucharow; Joseph M. Bruno; Bruno & Bruno; Richard Burbidge; Burbidge & Mitchell; Alvaro R. Calderon, Jr.; Kenneth M. Carter; Carter & Cates; David S. Casey, Jr.; Casey, Gerry, Reed & Schenk; Stanley M. Chelsey Waite, Schneider, Bayless & Chelsey; John R. Climaco; Climaco, Lefkowitz, Peca, Wilcox & Garofoli; John P. Coale; Coale, Cooley, et. al.; Dr. Richard Daynard; Paul Due; Due, Caballero, Price & Guidry; Gary Eubanks; Gary Eubanks & Associates; Calvin C. Fayard, Jr.; Fayard & Honeycutt; Gary Fine; Rodham & Fine; Wendell H. Gauthier; Gauthier, Downing, et. al.; Meyer H. Gertler; Gertler, Gertler & Vincent; Francis H. Hare, Jr.; Hare, Wynn, Newell & Newton; Russ M. Herman; Herman, Herman, Katz & Cotlar; Donald Hildre; Daugherty & Hildre; Robert C. Hillard; Hillard & Heald; Melvin L. "Kip" Holden; Holden, Harig, & Guidry; Don Howarth; Howarth & Smith; Andrew Hutton; Hutton, Hutton, Fisher & Andersen; John S. Keller; Sen. Donald G. Kelley; Kelley, Kelley Townsend & Thomas; Will Kemp; Harrison, Kemp & Jones; Ralph L. Knowles, Jr.; Doffermyra, Shields, et al.; J.D. Lee; Lee, Lee & Lee; Walter J. Leger, Jr.; Leger & Mestayer; Arnold Levin; Levin, Fishbein, Sedran & Berman; Robert J. Mellon; Mellon, Webster & Mellon; Les Mendelsohn; Mendelsohn & Jackson, P.C.; Edwin R. Murray; Edwin R. Murray & Associates; Kenneth B. Moll; Kenneth B. Moll & Associates, Ltd.; Stephen B. Murray; Murray Law Firm; Dianne M. Nast; Roda & Nast, P.C.; Jorge Ortiz–Brunet; Robert L. Redfearn; Simon, Peragine, Smith & Redfearn; William N. Riley; Young, Riley & Dudley; Mark P. Robinson, Jr.; Robinson, Calcagnie & Robinson; Louie Rousell, III; Michael X. St. Martin; St. Martin, St. Martin & Williams; Richard Sandman; Rodamn, Rodman & Sandman, P.C.; Marc C. Saperstein; Davis, Saperstein & Solomon; Stephen A. Sheller; Sheller, Ludwig & Badey; W. Hugh Sibley; W. James Singleton; Evan F. Trestman Gayle L. Troutwine; Williams & Troutwine, P.C.; Charles S. "Bucky" Zimmerman; Zimmerman Reed; John Doe; and Jane Doe, Defendants.

No. CIV.A. 01–10099–WGY.

United States District Court,
D. Massachusetts.

Sept. 18, 2003.

Holly B. Anderson, Cunningham, Machanic, Cetlin, Johnson & Harney, LLP, Natick, MA, Edward J. Barshak, William L. Boesch, Sugarman, Rogers, Barshak & Cohen, Boston, MA, for Richard A. Daynard, Plaintiff.

Annemarie M. Carney, Stephen M. Prignano, Alan M. Spiro, Edwards & Angell, LLP, Providence, RI, for Scruggs, Millette, Bozeman & Dent, P.A., Richard F. Scruggs, Defendant.

Patricia L. Kelly, Michael E. Mone, Esdaile, Barrett & Esdaile, Boston, MA, Mark A. Pogue, Edwards & Angell, LLP, Providence, RI, for Ness, Motley, Loadholt, Richardson & Poole, P.A., Ronald L. Motley, defendants.

Michael D. Lurie, Steven P. Perlmutter, Robinson & Cole, LLP, Boston, MA, for Levin, Fishbein, Sedran & Berman, Arnold Levin, defendants.

James W. Prendegrast, Linda M. Ricci, Jeffrey B. Rudman, Gabrielle R. Wolohojian, Hale & Dorr, LLP, Boston, MA, for Castano Plaintiffs Legal Committee.

*MEMORANDUM AND ORDER*

YOUNG, Chief Judge.

## I.  INTRODUCTION

This case involves disputes stemming from the Master Settlement Agreement ("Master Agreement") in the coordinated litigation against this country's major tobacco manufacturers.  The Plaintiff, Richard Daynard ("Daynard") sued Ness, Motley, Loadholt, Richardson & Poole; Ronald Motley; Scruggs, Millette, Bozeman & Dent; and Richard F. Scruggs (collectively "Ness Motley and Scruggs"), alleging that they failed to pay him an agreed-upon percentage of attorneys' fees generated by the Master Agreement.  Ness Motley and Scruggs subsequently filed a third-party complaint against the Castano Plaintiffs Legal Committee (the "Castano Group") and its individual members (collectively the "group members"), including Daynard, for breaching the terms of a memorandum of understanding and mutual release (the "Mutual Release") to which Ness Motley and Scruggs and the Castano Group agreed in order to resolve a dispute over attorneys' fees allocation under the Master Agreement.  The Castano Group and the group members contend that this Court lacks the requisite personal jurisdiction over them to entertain Ness Motley and Scruggs' claims against them and, accordingly, move to dismiss the third-party complaint.

### A.  Facts

#### 1.  Daynard's Claims

Daynard, a resident and citizen of Massachusetts, is a law professor at Northeastern University specializing in litigation against the tobacco industry.  Compl.

[Docket No. 1] ¶ 2. Daynard claimed that his efforts were central to many of the large recoveries embodied in the Master Agreement.  *Id.* ¶¶ 2–5.  Specifically, he alleged that he provided extensive assistance to Ness Motley and Scruggs in their suits against the tobacco industry and that he and Ness Motley and Scruggs agreed he would receive a fixed percentage of the attorneys' fees recovered by Ness Motley and Scruggs under the Master Agreement.  *Id.* ¶ 6. Ness Motley and Scruggs disputed the existence of such an arrangement.  Daynard and Ness Motley and Scruggs have settled these claims.

#### 2.  The Castano Group

The Castano Group is an unincorporated association[1] of approximately fifty-six lawyers and law firms and has its principal place of business in New Orleans, Louisiana.  Castano Group Mem. [Docket No. 202] at 2.  The association was formed in January 1994 to prosecute litigation against the tobacco industry and for the particular purpose of prosecuting a putative class action lawsuit entitled *Castano, et. al. v. The American Tobacco Co., Inc., et. al.,* Civil Action No. 94–1044, filed in the United States District Court for the Eastern District of Louisiana.  *Id.* Ness Motley and Scruggs identify Daynard and attorney Richard Sandman ("Sandman") as the only individual members of the Castano Group who reside in Massachusetts;[2] and the law firm of Rodman, Rodman & Sandman ("the Sandman firm") as the sole member law firm located in Massachusetts.  Ness Motley and Scruggs' Mem. Opp'n [Docket No. 263] at 4–5.  It is undisputed that the Castano Group has no office in Massachusetts, has never rented

---

1.  The precise nature of the organization is disputed.  *See* discussion, *infra* § 2.B.1.

2.  Ness Motley and Scruggs also claim that Harvard Law School professors Arthur Miller and David Shapiro were Castano Group "agents" residing in Massachusetts.  Ness Motley and Scruggs' Mem. Opp'n at 5.

or owned property in Massachusetts, has no assets in Massachusetts, and has never paid taxes in Massachusetts. Castano Group Mem. at 2.

Membership in the Castano Group is governed by a written agreement known as the Castano Plaintiffs Attorneys Agreement (the "Membership Agreement"). Ness Motley and Scruggs' Mem. Opp'n Exs. [Docket No. 264] at Ex. B. Under its terms, the association is managed by an Executive Committee, which reviewed and approved the filing of specific actions against the tobacco industry.[3] *Id.* According to the Chairman of the Executive Committee, Robert Redfearn, individual members of the Castano Group are permitted to practice law independently of the Castano Group and it "takes no responsibility" for such independent activities. Redfearn Aff. [Docket No. 203] ¶ 12.

### 3. The Mutual Release

Following settlement of the majority of claims against the tobacco industry, the Castano Group and Ness Motley and Scruggs became involved in a dispute concerning the allotment of attorneys' fees arising out of the Master Agreement. The parties attempted to resolve the dispute in late–1999 and early–2000. Amended Third–Party Complaint ("Am.Compl.") [Docket No. 100] ¶ 57; Redfearn Aff. ¶ 28. Eventually, the Mutual Release was executed in Louisiana and Florida. Am. Compl. ¶¶ 58–59. The Mutual Release contains a representation from the Castano Group that "each and every law firm and lawyer now or formerly comprising part of it" released Ness Motley and Scruggs from "any claim for fees" earned

by Ness Motley and Scruggs pursuant to the Master Agreement. *Id.* at Ex. A, ¶ 1. Fifty-two attorney members of the Castano Group signed the release; Daynard did not. Redfearn Aff. ¶¶ 29–30. One issue in the third-party complaint is whether the Mutual Release covers Daynard's individual claim against Ness Motley and Scruggs for compensation stemming from services provided by Daynard to them between 1993 and 1997. Am. Compl. ¶¶ 59–66.

### 4. The Castano Group's Contacts with Massachusetts

In the third-party complaint, Ness Motley and Scruggs conclusorily asserted that the Castano Group has "contacts with the Commonwealth of Massachusetts sufficient to invoke this Court's personal jurisdiction over the [Castano Group] and each of its members." *Id.* ¶ 50. Ness Motley and Scruggs now allege in their Opposition that the Castano Group's contacts in Massachusetts are five-fold: a) Castano Group members, attorneys, and expert witnesses located in Massachusetts; b) trips to and meetings held in Massachusetts; c) written communications sent by the Castano Group to Massachusetts; d) telephone calls from the Castano Group to Massachusetts; and e) activities conducted by the Castano Group in Massachusetts. Ness Motley and Scruggs' Mem. Opp'n at 4–7.[4]

The following facts appear without substantial dispute:

### a. Members, Attorneys, and Expert Witnesses Located in Massachusetts

Daynard is a resident and citizen of Massachusetts and has been a member of

---

**3.** The Executive Committee never approved the filing of any action in Massachusetts.

**4.** None of the supporting materials that allegedly substantiate these contentions were submitted to the Court, but the Castano Group does not earnestly contest—either in its pa-

pers or during oral argument on the motion—the underlying veracity of the factual representations made by Ness Motley and Scruggs. The Castano Group does, however, differ in its interpretation of these proffers. These matters are discussed *infra.*

the Castano Group's Executive Committee since 1994. *Id.* at 4. According to Ness Motley and Scruggs, Daynard recorded 727 hours of billable time working on Castano Group business. *Id.* Sandman and his law firm also have been members of the Castano Group since 1994. *Id.* Members of the Sandman firm recorded 7,553.25 hours on Castano Group business. *Id.* at 4–5. Professor Miller billed a total of 177.50 hours of work for the Castano Group; Professor Shapiro similarly billed 43 hours. *Id.* at 5. An expert witness based in Brookline, Dr. Adam Jaffe ("Dr. Jaffe"), billed the Castano Group for 36.5 hours. *Id.*

### b. Trips to and Meetings in Massachusetts

On December 2, 1994, the Castano Group held a general membership meeting in Boston; at least 18 Castano Group members not located in Massachusetts traveled to Boston to attend.[5] *Id.* Castano Group administrator Suzie Foulds ("Foulds") traveled to Boston on four occasions between 1994 and 1999 for Castano Group-related reasons. *Id.* at 6. A few Castano Group members traveled to Boston to attend Tobacco Products Liability Project conferences sponsored by Daynard. *Id.* Finally, Castano Group Executive Committee Member Calvin C. Fayard, Jr. ("Fayard") traveled to Massachusetts "on [Castano Group] business" on nine occasions between 1994 and 2001. Ness Motley and Scruggs' Mem. Opp'n to Levin Defs.' Mot. [Docket No. 272] at 6.

### c. Written Communications

Ness Motley and Scruggs represent that they are in possession of 176 documents sent by the Castano Group to Daynard in Massachusetts. Ness Motley and Scruggs'

Mem. Opp'n at 6. Telephone records indicate that the Castano Group sent 1,186 faxes to Daynard in Massachusetts between 1994 and 2001. *Id.* Finally, records from the Sandman firm "contain 211 entries reflecting its receipt and review of documents received from the [Castano Group] or its members." *Id.*

### d. Telephone Calls

Phone records indicate that the Castano Group placed 3,348 telephone calls to Massachusetts telephone numbers (including fax transmissions). *Id.* The Castano Group made 418 phone calls to Daynard and 244 phone calls to the Sandman firm. *Id.* Daynard's records indicate 106 phone calls with the Castano Group and its members between 1994–1997; the Sandman firm records indicate 119 phone calls with the Castano Group. *Id.* at 6–7.

### e. Activities in Massachusetts

The Castano Group held a general membership meeting in 1994 and conducted 34 interviews—in person or by telephone—with potential clients in Massachusetts. *Id.* at 7. It attended ten depositions in Massachusetts; contacted and met with expert witnesses in Massachusetts; reviewed pleadings, documents and tobacco-related articles in Massachusetts; and drafted memoranda in Massachusetts. *Id.* Some Castano Group members performed work on other tobacco litigation in Massachusetts. *Id.*

### B. Procedural Posture

Daynard filed his complaint in this action in 2000 and it was removed to the District Court of Massachusetts in January, 2001. On December 12, 2001, this Court allowed Scruggs' motion to dismiss

---

**5.** The Castano Group argues that such meeting occurred outside the time period relevant to the jurisdiction analysis.

for lack of personal jurisdiction, but the First Circuit reversed that ruling. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole*, 290 F.3d 42 (1st Cir.2002). On June 28, 2002, Ness Motley and Scruggs filed its third-party complaint against the Castano Group and group members. In response, the Castano Group and group members moved to dismiss for lack of personal jurisdiction. One group member, Arnold Levin and his firm, Levin, Fishbein, Sedran & Berman ("Arnold Levin"), moved individually to dismiss for lack of personal jurisdiction or, in the alternative, for summary judgment. These are the motions now before the Court. The Court has permitted Ness Motley and Scruggs to obtain limited jurisdictional discovery.

## II. DISCUSSION

This Court's *in personam* jurisdiction over the Castano Group in this case may either be "specific" or "general." Before analyzing the merits of the jurisdictional issue, however, it is necessary to identify the procedural approach to be employed.

### A. Burden of Proof and Standard of Review

■ The plaintiff bears the burden of proving the court's personal jurisdiction over the defendant. *Daynard,* 290 F.3d at 50. The district court, confronting a motion to dismiss for lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2), may choose from among several methods for determining whether the plaintiff has met that burden. *Id.* at 50–51. The three methods are: 1) the "prima facie" method; 2) the "preponderance-of-the-evidence" method; and 3) the "likelihood" method. *Id.*

■ The First Circuit has established a procedural matrix for resolving disputes about personal jurisdiction. First, the "prima facie" method permits the district court to "consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." *Boit v. Gar–Tec Prods., Inc.,* 967 F.2d 671, 675 (1st Cir.1992). In asserting personal jurisdiction under this method, a party cannot rest upon the pleadings but must adduce evidence of specific facts. *Foster–Miller, Inc. v. Babcock & Wilcox Canada,* 46 F.3d 138, 145 (1st Cir.1995). In this way, the district court acts as a "data collector" and not a fact finder. *Id.* In other words, as in ruling on a motion for summary judgment, the court "must accept the plaintiff's (properly documented) evidentiary proffers as true" in making its determinations. *Id.*

■ Second, when a court determines that "it is unfair to force an out-of-state defendant to incur the expense and burden of a trial on the merits in the local forum without first requiring more of the plaintiff than a *prima facie* showing of facts essential to *in personam* jurisdiction," the "preponderance-of-the-evidence" standard is appropriate. *Boit,* 967 F.2d at 676. Specifically, a court should employ this standard "when the proffered evidence is conflicting and the record is rife with contradictions, or when a plaintiff's affidavits are 'patently incredible,' . . . ." *Id.* If utilized, the standard requires an evidentiary hearing. The First Circuit has cautioned that this method should be used discreetly because (1) the hearings are taxing and cumbersome; and (2) factual determinations made before trial may have binding, preclusive effects. *Id.* at 677.

■ The First Circuit has provided a third method by which to proceed and has stated that when "the assertion of jurisdiction is bound up with the claim on the merits," but there exists "the possibility of permitting a dubious case to proceed beyond the pleading stage, and even to trial, though the court eventually will be found

to lack jurisdiction," utilizing the "likelihood" standard is appropriate. *Foster–Miller*, 46 F.3d at 146. The First Circuit has dubbed this method an "intermediate standard." *Id.* In the instant case, the facts surrounding jurisdiction are not "bound up with the claim on the merits," and, therefore, the method is inappropriate here.

■ The most conventional of the methods is the "prima facie" method—the method suggested by all parties to this case. The prima facie method—not the preponderance method—is the proper one here because the parties generally are not contesting the facts relating to jurisdiction.[6] In choosing to apply the "prima facie" method, the Court accepts Scruggs and Ness Motley's evidentiary proffers as true and construes them in the light "most congenial to [their] jurisdictional claim." *Daynard*, 290 F.3d at 51.

### B. General Personal Jurisdiction

■ "In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction 'is the functional equivalent of a state court sitting in the forum state.' " *Sawtelle v. Farrell*, 70 F.3d 1381, 1387 (1st Cir.1995). This Court may exercise authority over a third-party defendant "by virtue of either general or specific [personal] jurisdiction." *Mass. Sch. of Law at*

*Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir.1998).

■ General jurisdiction exists when the defendant has engaged in "continuous and systematic activity" in the forum, even if the activity is unrelated to the suit. *United Elec., Radio & Mach. Workers of America v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1088 (1st Cir.1992). The test for determining whether general jurisdiction exists differs depending on whether the defendant is merely an "unincorporated association" or whether it is a partnership or joint venture. The First Circuit has held that

> an unincorporated association which does not itself conduct significant activities in, or enjoy affiliating circumstances with, a state cannot be subject to the general personal jurisdiction of the state's courts on the basis of a member's contacts within the state unless the member carries on the in-forum activities under the association's *substantial influence*.

*Donatelli v. National Hockey League*, 893 F.2d 459, 472 (1st Cir.1990) (emphasis added). *Donatelli*'s substantial influence test, however, "*does not control* where one seeks to attribute contacts from one partner to partnership or from subsidiary to corporate parent." *Daynard*, 290 F.3d at 54 (emphasis added).[7] In the partnership

---

**6.** Although the Castano Group does not dispute explicitly the veracity of the facts proffered by Scruggs and Ness Motley, the Castano Group states that Sandman and Daynard "do not act and have not acted as agents for the [Castano Group] in their daily activities in Massachusetts." Castano Group Mem. at 12. Furthermore, the Castano Group states that the "remaining Castano Defendants have not traveled to Massachusetts in connection with the work of the [Castano Group] or met with Scruggs or Ness Motley in Massachusetts." *Id.* at 13. The record, however, is not *"rife with contradictions,"* as the First Circuit requires prior to holding an evidentiary hearing. Some of the statements by the Castano Group appear to contradict some of Ness

Motley and Scruggs' proffers but not sufficiently to warrant an evidentiary hearing. The essential question presented here is not one of fact, but one of law; that is, whether the jurisdictional ties proffered by Ness Motley and Scruggs are sufficient to confer jurisdiction upon the Castano Group and group members. Therefore, notwithstanding the disputed facts mentioned in this footnote, the Court accepts Ness Motley and Scruggs' proffers as true. *See Foster–Miller*, 46 F.3d at 145.

**7.** The *Daynard* decision fell within the context of specific jurisdiction, but its holding was not necessarily so limited, that is, the language in *Daynard* with respect to "implied agency rela-

context, "the activities of the partner are generally attributed to the partnership and jurisdiction over the partnership follows from the partner's contacts, if sufficient, regardless of the absence of independent contacts between the partnership *qua* entity and the forum." *Donatelli*, 893 F.2d at 466.

### 1. Classifying the Castano Group: Partnership or Unincorporated Association

██ The Court must first assess whether the Castano Group is a partnership or joint venture or whether it is merely an "unincorporated association." Here, there is likely no implied agency or partnership relationship between the Castano Group and its members. Generally, a partnership arises only when parties intend to associate themselves as partners. *Cardullo v. Landau*, 329 Mass. 5, 8, 105 N.E.2d 843 (1952); *Carlson v. Ewing*, 219 La. 961, 54 So.2d 414, 417 (1951). Ness Motley and Scruggs' evidence on this issue is decidedly thin. Arnold Levin, a single group member, refers to the Castano Group as a "partnership and/or joint venture."[8] Ness Motley and Scruggs' Mem. Opp'n at 3. The Castano Group's Membership Agreement states that all Castano Group members would "jointly undertake the prosecution and financing" of the group's seminal case. Ness Motley and Scruggs' Mem. Opp'n Exs. [Docket No. 264], Ex. B at 1. Finally, the Castano Group describes itself as a "consortium" in the Mutual Release, *id.*, Ex. C. at 1; "consortium" is defined *secondarily* as "an association or partnership" in the dictionary. The American Heritage Dictionary, 313–14 (2d ed.1985). Ness Motley and Scruggs present no other evidence supporting their allegation that the Castano Group is a partnership.

██ Such a paucity of evidence of intent strongly suggests that the Castano Group is not a partnership. First, the word "partnership" does not appear in the Membership Agreement. *See, e.g., Shain Inv. Co., Inc., v. Cohen*, 15 Mass.App.Ct. 4, 7, 443 N.E.2d 126 (1982) (noting that the absence of term "partnership" is relevant). In addition, in *Cardullo*, the evidence of intent was gleaned from evidence pertaining to conversations *at the time of the associational agreement.* 329 Mass. at 8–9, 105 N.E.2d 843. The evidence presented here is lacking, as Ness Motley and Scruggs can produce little evidence of intent.[9] The instant case is vastly different than the relationship between Ness Motley and Scruggs described in *Daynard*, where there was evidence of an implied agency relationship.[10] Moreover, Ness Motley and Scruggs themselves allege that the Castano Group is merely an unincorporated association in their complaint and do not allege therein a partnership or joint

---

tionships" may well be applicable to general jurisdiction cases as well as specific jurisdiction cases.

**8.** The Castano Group suggests that Arnold Levin has "a vested interest in portraying the [Castano Group] as a partnership in order to support their claim of breach of fiduciary duty against the [Castano Group] in a separate and unrelated action." Castano Group Reply Mem. [Docket No. 269] at 6 n. 6.

**9.** Furthermore, Ness Motley and Scruggs do not attempt to argue partnership by estoppel or the like.

**10.** In the *Daynard* decision—a prior decision in the instant case—the First Circuit declined to apply *Donatelli* and ruled that the relationship between Scruggs and Ness Motley, although not an actual partnership, "invokes certain principles of the law of agency, partnership, and joint venture and that these principles permit imputing contacts without the need to show substantial influence." 290 F.3d at 54.

venture. Am. Compl. ¶ 3. Indeed, it appears to the Court that Ness Motley and Scruggs' attempt to classify the Castano Group as a partnership is a midnight-hour effort to bolster an uncertain jurisdictional claim. Again, the party asserting personal jurisdiction bears the burden of proof, and Ness Motley and Scruggs do not carry their burden with respect to this issue.[11] Thus, the Court finds that the Castano Group is an unincorporated association.

## 2. Substantial Influence

Although the Castano Group is not a partnership for purposes of this jurisdictional analysis, whether personal jurisdiction exists is another matter. The First Circuit has said that the question is "whether a sufficient relationship exists under the Due Process Clause to permit the exercise of jurisdiction, not whether a partnership, joint venture, or other particular agency relationship between the [Castano Group and its members] exists." *Daynard*, 290 F.3d at 56–57. Specifically, an unincorporated association may be subject to general personal jurisdiction on the basis of a member's contacts within the state where "the member carries on the in-forum activities under the association's substantial influence." *Donatelli*, 893 F.2d at 472.

The first part of the analysis outlined by the First Circuit is whether "one or more members of the association possess the requisite minimum contacts." *Id.* at 468–69. In this case, it is undisputed that the Sandman firm billed over 7,500 hours over many years [12] working on tobacco litigation in connection with the Castano Group.[13] In addition, the Castano Group hired consultants and experts in Massachusetts.[14] The Castano Group does not contest that these individual members themselves had the requisite minimum contacts to satisfy the first prong of the *Donatelli* analysis. Accordingly, the Court finds the first prong of the analysis so satisfied.

Next, the Court must determine "whether or not the association exercised *substantial influence* over the member's decision to carry on the in-forum activities which constitute the relevant 'minimum contacts.'" *Donatelli*, 893 F.2d at 469 (emphasis added). The Castano Group attempts to argue that the work completed by Daynard and Sandman in Massachusetts was not done under the substantial influence of the Castano Group because the work need not have been performed in Massachusetts. Castano Group Reply Mem. at 12–13. In other words, the Castano Group argues that, because it did not require its members to live and work in

---

11. The Court also rejects the attempt to classify the Castano Group as a "Joint Venture" as a similarly contrived jurisdictional hook.

12. The Castano Group states that a small portion of this work was done during a time that falls outside the period to which courts look when assessing the sufficiency of contacts in general jurisdiction cases. The Castano Group does not contest, however, that the firm billed many hours in furtherance of the tobacco litigation project.

13. The Castano Group concedes that Daynard and Sandman participated in regular communications with the Castano Group about the status of and strategy for tobacco litigation, legal research and writing, and the review of pleadings and discovery. Castano Group Reply Mem. at 13.

14. Although Ness Motley and Scruggs argue that travel to Massachusetts by members other than Daynard and Sandman should be considered, such arguments are unavailing. A few trips to attend conferences are insufficient to shore up the analysis. Moreover, many of the alleged trips occurred more than five years prior to the filing of the third-party complaint in this action, and the Court declines to extend the jurisdictional time boundary so far.

Massachusetts and because the work was not completed to further any litigation filed in Massachusetts, the work need not have been performed there, and, thus, the work was not done under the substantial influence of the Castano Group.

The Castano Group, however, misapprehends the reasoning in *Donatelli*. In *Donatelli*, the First Circuit stated that Rhode Island lacked personal jurisdiction over the NHL because each of the member hockey clubs conducts its business affairs autonomously—the NHL simply creates schedules, promulgates rules, provides referees, and the like. *Donatelli*, 893 F.2d at 470–71. Unlike the circumstances in *Donatelli*, however, the Castano Group as a whole provided the strategic and logistical plan for the various lawsuits. It is irrelevant that the work could have been performed in Massachusetts, Louisiana, or Hawaii; the Castano Group as a whole benefitted from the work its individual members performed in the pursuit of tobacco litigation victories across the country. Daynard and Sandman were not working in a vacuum; their work is inextricably linked to the work of the entire association and was done to benefit the association as a whole.[15] Members of the Castano Group performed work in furtherance of the very goals of the association by availing themselves of the Massachusetts forum, that is, they resided in Massachusetts, they had offices in Massachusetts, they were licensed to practice law in Massachusetts, and they presumably paid taxes in Massachusetts. It is of no moment that the Castano Group did not instruct that the work be done in Massachusetts; only that it *be done* and that it *was done* by group members in Massachusetts.

Finally, under *Donatelli*, the Court must determine whether the other "Gestalt" factors inherent in due process "render it equitable, or inequitable, to bring the unincorporated association before the forum court." *Id.* at 469. Such "Gestalt" factors include notice, predictability, foreseeability, purposeful availment, and reciprocity. *Id.; see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477–78, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (requiring that personal jurisdiction comport with "fair play and substantial justice").

Conferring personal jurisdiction on this Court over the Castano Group likely *does comport* with due process under *Burger King*. While it is true that it might be more "efficient" to bring this suit, for example, in Louisiana where the Castano Group is headquartered and principally conducts its business, the other factors seem to weigh in favor of conferring jurisdiction here. The Castano Group was free to choose the fora in which to conduct its work and whom to admit as members, that is, it could well have chosen to work only in those states wherein it filed litigation and to associate only with members from those states. By allotting work to Daynard and Sandman, the Castano Group purposefully availed itself of the Massachusetts forum, and it was foreseeable that the Castano Group might be haled into court here. Likewise, the Castano Group derived a substantial benefit from the work conducted by Daynard and Sandman in Massachusetts, such that reciprocity counsels in favor of jurisdiction in Massachusetts. In addition, bringing the suit in this Court is efficient because the related litigation was commenced here, thereby

---

**15.** By way of analogy, a computer company that produces its keyboards in a Massachusetts factory, sells its products exclusively in California, and otherwise has no contacts with Massachusetts would likely be subject to general personal jurisdiction in Massachusetts because it has continuous and systematic contacts in the forum state through its manufacturing facility.

promoting economies of judicial resources. On balance, the *Burger King* factors appear to weigh in favor of jurisdiction.

Even assuming that the members were not under the Castano Group's substantial influence, however, the *Donatelli* analysis is not necessarily controlling in this case. As the First Circuit has said, "*Donatelli*'s substantial influence test does not control the entire universe of cases in which one party's contacts might be attributed to another." *Daynard*, 290 F.3d at 54. "*Donatelli* addresses the potentially unjust scenario in which an association with no direct contacts with a forum, is haled in to a forum based on one of its members' continuous and systematic activities in the forum, to answer a lawsuit unrelated to either the member's or the association's in-forum activities." *Id.* at 55. That concern, however, is not present in the instant case. Here, members of an association were conducting activities continuously and systematically in Massachusetts that directly benefitted the Castano Group. In other words, the Court is able to "link[ ] the member's in-forum activity with the association's relationship with that member," *id.*, notwithstanding whether *Donatelli*'s substantial influence test applies and has been met.

In sum, even if the Castano Group is merely an unincorporated association—and not a partnership—it likely exerted "substantial influence" over Daynard and Sandman sufficient to confer jurisdiction over them in this Court. As the First Circuit said, "[d]etermining personal jurisdiction has always been more an art than a science." *Donatelli*, 893 F.2d at 468 n. 7. Further, "the very breadth of the array of

associational institutions, and their diverse nature, necessitates using a functional, flexible, case-specific methodology." *Id.* at 468. On the facts of this case, therefore, the Court rules that exercising personal jurisdiction over the Castano Group comports with due process.

Because the Court retains general personal jurisdiction over the Castano Group, the Court need not resolve the question of specific jurisdiction.

### C. Jurisdiction over Individual Group members

■ That the Castano Group is subject to personal jurisdiction in Massachusetts as an unincorporated association does not imply that this Court has personal jurisdiction over group members who reside outside Massachusetts. A court in this district has held that a court's general jurisdiction over the ABA does not confer jurisdiction over individual members of an ABA committee. *Massachusetts Sch. of Law at Andover, Inc. v. American Bar Ass'n*, 959 F.Supp. 36, 38 (D.Mass.1997) (Lasker, J.); *cf. Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 906 (1st Cir.1980) (holding that the "general rule is that jurisdiction over the individual officers of a corporation may not be based merely on jurisdiction over the corporation"). Ness Motley and Scruggs do not allege that any members, other than Sandman and Daynard, engaged in any relevant activity in Massachusetts individually.[16] As the Supreme Court has stated, "it is essential ... that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities

**16.** It is undisputed that Daynard, Sandman, and the Sandman firm are subject to the personal jurisdiction of this Court. Although Ness Motley and Scruggs—at the hearing on the motion to dismiss—argued that Fayard was also subject independently to this Court's personal jurisdiction, the Court does not so rule. The only contacts allegedly attributable to Fayard are nine trips to Massachusetts between 1994 and 2001 (some of which are too far removed to be considered in the jurisdictional analysis). General personal jurisdiction over Fayard on this basis cannot be argued in earnest.

within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Ness Motley and Scruggs merely argue that the Castano Group is a partnership and, therefore, jurisdiction over one partner confers jurisdiction over all. Ness Motley and Scruggs' Opp'n at 19–20. As stated above, however, the Castano Group is not a partnership. Conferring personal jurisdiction upon the individual group members in the case does not comport with the due process requirements of *Hanson, Burger King*, and their progeny.

Although the Castano Group is an unincorporated association, it concedes that it has the capacity to be sued as a jural entity in its own name. Castano Group Mem. at 12 n. 4. This concession appears in harmony with the reasoning in *Northbrook Excess & Surplus Insurance Co. v. Medical Malpractice Joint Underwriting Ass'n of Massachusetts*, 900 F.2d 476, 480 (1st Cir.1990). Therefore, Ness Motley and Scruggs' action may proceed against the Castano Group without the group members and against Daynard, Sandman, and the Sandman firm individually.

## III. CONCLUSION

Accordingly, the Castano Group's motion to dismiss for lack of personal jurisdiction [Docket No. 201] is DENIED IN PART with respect to the Castano Plaintiffs Legal Committee. The motion is ALLOWED IN PART with respect to all individual group members except Richard A. Daynard, Richard Sandman, and Rodman, Rodman & Sandman, P.C.

Furthermore, Arnold Levin's [Docket No. 204] and Daniel Becnel Jr.'s [Docket No. 209] motions to dismiss for lack of personal jurisdiction are ALLOWED. Arnold Levin's alternative motion for summary judgment [Docket No. 204] is DENIED as moot.

The case shall proceed against the Castano Plaintiffs Legal Committee, Richard A. Daynard, Richard Sandman, and Rodman, Rodman & Sandman, P.C.

SO ORDERED.