Richard A. DAYNARD, Plaintiff,

v.

MRRM, P.A., Ronald Motley, Scruggs, Millette, Bozeman & Dent, P.A., and Richard F. Scruggs, Defendants/Third–Party Plaintiffs,

v.

CASTANO PLAINTIFFS' LEGAL COMMITTEE a/k/a "Castano Group" Richard Sandman, and Rodman, Rodman & Sandman, P.C., Third–Party Defendants/Counterclaim Plaintiffs.

CIV.A. No. 01–10099–WGY.

United States District Court,
D. Massachusetts.

July 2, 2004.

Edward J. Barshak, William L. Boesch, Sugarman, Rogers, Barshak & Cohen, Boston, MA, Holly B. Anderson, Cunning-ham, Machanic, Cetlin, Johnson & Harney, LLP, Natick, MA, for Plaintiffs.

Mark A. Pogue, Stephen M. Prignano, Annemarie M. Carney, Edwards & Angell, LLP, Providence, RI, Michael E. Mone, Patricia L. Kelly, Esdaile, Barrett & Esdaile, Alan M. Spiro, Edwards & Angell, LLP, Michael D. Lurie, Steven P. Perlmutter, Robinson & Cole, Gabrielle R. Wolohojian, James W. Prendegrast, Jeffrey B. Rudman, Linda M. Ricci, Hale & Dorr, LLP, Boston, MA, for Defendants.

Coale Cooley Leitz, Washington, DC, pro se.

Diane Cooley, Coale Cooley Lietz, Washington, DC, pro se.

David K. Lietz, Coale Cooley Lietz, Washington, DC, pro se.

Carter & Cates, New Orleans, LA, pro se.

Daniel E. Becnel, Jr., Reserve, LA, pro se.

## MEMORANDUM

YOUNG, Chief Judge.

### I. INTRODUCTION

This case involves disputes stemming from the Master Settlement Agreement ("Master Agreement") that resolved litigation against various tobacco manufacturers. The Plaintiff, Richard Daynard ("Daynard"), sued Ronald Motley; Ness, Motley, Loadholt, Richardson & Poole (now MRRM, P.A.; hereinafter "Ness Motley"); Richard F. Scruggs; and Scruggs, Millette, Bozeman & Dent (collectively "Scruggs"), alleging that they failed to pay him an agreed-upon percentage of attorneys' fees generated by the Master Agreement. Ness Motley filed a third-party complaint and Scruggs filed a cross-claim against the Castano Plaintiffs' Legal Committee (the "Castano Group") and its individual members (collectively the

"Third–Party Defendants") for allegedly breaching the terms of a memorandum of understanding (the "Memorandum of Understanding") and mutual release (the "Mutual Release") agreed to by the parties to resolve a dispute over attorneys' fees allocation under the Master Agreement. Ness Motley and Scruggs also claimed breach of warranty, indemnification, and negligent misrepresentation. The Third–Party Defendants subsequently filed counterclaims against Ness Motley and Scruggs for allegedly breaching the terms of the Memorandum of Understanding and the covenant of good faith and fair dealing. Daynard has since settled his claims against Ness Motley and Scruggs.

On February 12, 2004, after hearing cross-motions for summary judgment filed by Ness Motley and Scruggs [Doc. No. 301] and the Third–Party Defendants [Doc. No. 305], this Court held that Louisiana law governed the third-party claims and counterclaims. This memorandum explains the reasoning behind the Court's decision.

## II. BACKGROUND

The facts of this case are documented in four prior decisions of this Court, *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 178 F.Supp.2d 9 (D.Mass.2001) ("*Daynard I*"); *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 184 F.Supp.2d 55 (D.Mass.2001) ("*Daynard II*"), *rev'd*, 290 F.3d 42 (1st Cir.2002); *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 188 F.Supp.2d 115 (D.Mass.2002) ("*Daynard III*"); *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 284 F.Supp.2d 204 (D.Mass. 2003) ("*Daynard IV*"). Nevertheless, the Court will outline those facts most relevant to the question of what law governs the dispute between Ness Motley and Scruggs and the Third–Party Defendants.

### A. Daynard's Original Claims

Daynard, a resident of Massachusetts and former member of the Castano Group, is a law professor at Northeastern University specializing in litigation against the tobacco industry. *Daynard IV*, 284 F.Supp.2d at 208. He alleged in the underlying suit that he provided extensive assistance to Ness Motley, a South Carolina law firm with an office in Louisiana, and Scruggs, a Mississippi law firm, in their lawsuits against the tobacco industry. *Id.* Daynard further alleged that he and Ness Motley and Scruggs orally agreed that in exchange for his services he would receive a fixed percentage of the attorneys' fees recovered by Ness Motley and Scruggs under the Master Agreement. *Id.* Ness Motley and Scruggs denied the existence of this arrangement. *Id.* This Court held in *Daynard III*, 188 F.Supp.2d at 123, that the law of Massachusetts governed this dispute between Daynard and Ness Motley and Scruggs. The parties have since settled these claims. *Daynard IV*, 284 F.Supp.2d at 208.

### B. The Castano Group

The Castano Group is an unincorporated association of approximately fifty-six lawyers and law firms and has its principal place of business in New Orleans, Louisiana. *Id.* Twenty-three of the fifty-six lawyers and law firms that compose the Castano Group have their principal place of business in Louisiana. Third–Party Defs./Countercl. Pls.' Reply [Doc. No. 318], Ex. A. The association was formed in January 1994 to prosecute litigation against the tobacco industry. *Daynard*, 284 F.Supp.2d at 208.

Richard Sandman, a Massachusetts resident, and Rodman, Rodman & Sandman, P.C., located in Massachusetts, are the only remaining individual Castano Group members named as Third–Party Defen-

dants in this case. *See id.* at 217. There is no evidence in the record that either of these members played any direct role in the negotiation or execution of the Mutual Release or Memorandum of Understanding.

### C. The Mutual Release

The contract and negligent misrepresentation claims set forth by Ness Motley and Scruggs in this third-party litigation stem from an alleged breach of the Mutual Release. Following the settlement of the majority claims against the tobacco industry, the Castano Group and Ness Motley and Scruggs became involved in a dispute concerning the allotment of attorneys' fees arising out of the Master Agreement. The Castano Group, through its representatives Robert Redfern, Calvin Fayard, and Wendell Gauthier, and Ness Motley and Scruggs attempted to resolve the dispute in late 1999 and early 2000. Defs./Third–Party Pls.' Facts [Doc. No. 316] ¶ 5. The Castano Group sought compensation from Ness Motley for the benefits they had received as a result of the Castano Group's tobacco-related work (the "Common Benefit Claims"). *Id.* ¶ 6.

Eventually, a Mutual Release was negotiated at meetings in Florida and South Carolina and by telephone from Louisiana, South Carolina, and Mississippi. Third–Party Defs./Countercl. Pls.' Facts ¶¶ 16, 20–22. The Mutual Release, the Memorandum of Understanding, and a side letter between Ness Motley and the Castano Group were drafted by Robert Redfearn in Louisiana. *Id.* ¶¶ 19–20, 25; Defs./Third–Party Pls.' Facts ¶ 9. The final draft of the Mutual Release contains a representation from the Castano Group that "each and every law firm and lawyer now or formerly comprising part of it" releases Ness Motley and Scruggs "from any and all claims, rights or causes of action ... that may arise out of or relate in anyway to (i)[Ness Motley's or Scruggs'] association, member-

ship and relationship whatsoever with [the Castano Group], and (ii) any claim for fees or reimbursements of costs paid to or to be paid to" Ness Motley and Scruggs pursuant to the Master Agreement. Defs. /Third–Party Pls.' Facts, Ex. B (hereinafter "Mutual Release") ¶ 2. In exchange for this release, Ness Motley and Scruggs agreed to assist the Castano Group with their fee arbitration in California's Davis–Ellis case. Defs./Third–Party Pls.' Facts ¶ 8. The Mutual Release was executed by the Castano Group and Mr. Rice in Louisiana. Third–Party Defs./Countercl. Pls.' Facts ¶ 23.

The Mutual Release stated that Mr. Gauthier, as the Castano Group's signatory, was "duly authorized to execute and deliver" the Mutual Release on behalf of the Castano Group. Mutual Release ¶ 3. The Mutual Release was circulated among the Castano Group's members for their individual signatures. Defs./Third–Party Pls.' Facts ¶ 16. Fifty-one attorney members of the Castano Group signed the release, but Daynard did not. *Id.*, Ex. F (Guidroz Dep.) at 46. Daynard later contacted the Castano Group by telephone to explain that he had outstanding issues with Ness Motley and Scruggs regarding legal fees. *Id.* ¶¶ 27–28.

The Castano Group's alleged misrepresentations regarding their authority to release Daynard's individual claims through the Mutual Release are at the heart of Ness Motley and Scruggs' third-party claims and cross-claims of indemnification, breach of the Mutual Release, breach of warranty, and negligent misrepresentation.

### D. The Memorandum of Understanding

The Memorandum of Understanding was drafted in connection with the Mutual Release and provided that Ness Motley

and Scruggs would assist the Castano Group with the fee arbitration in California's Davis–Ellis tobacco litigation. *Id.* ¶ 43. Specifically, Ness Motley and Scruggs agreed to "work in good faith to assist and support the [Castano Group] in obtaining (i) a fair, reasonable and equitable hearing and result in the Davis–Ellis Fee Arbitration, [and] (ii) an early arbitration date for the Davis–Ellis Fee Arbitration." *Id.,* Ex. J (hereinafter "Memorandum of Understanding") ¶ 1.

The Third–Party Defendants counterclaim that Ness Motley and Scruggs breached the Memorandum of Understanding by delaying the Castano Group's arbitration date and by engaging in bad faith conduct that resulted in a lower arbitration award.

## III. DISCUSSION

Although this Court previously held that Massachusetts bears the closest relationship to Daynard's original breach of contract claims, *Daynard III,* 188 F.Supp.2d at 118–23, the Third–Party Defendants have argued that "the third-party claims and crossclaims arise from a different set of facts, albeit drawn from the same constellation, which casts doubt on the application of Massachusetts law to this matter." Third–Party Defs./Countercl. Pls.' Summ. J. Mem. [Doc. No. 306], at 4. They contended that Louisiana bears the most significant relationship to this controversy. *Id.* at 4–6. Ness Motley and Scruggs countered that "[w]hile a handful of new factors are present in this third-party litigation," Massachusetts law should still apply. Defs./Third–Party Pls.' Summ. J. Opp'n [Doc. No. 315] at 4. Although Daynard's actions in Massachusetts remain relevant to this case, the epicenter of this litigation clearly shifted from Daynard's alleged fee arrangements with Ness Motley and Scruggs to the Mutual Release and Memorandum of Understanding entered into by the Castano Group and Ness Mot-

ley and Scruggs. This Court, therefore, undertook a new choice of law analysis.

### A. Choice of Law Analysis for the Contract Claims

■ Generally, "[w]hen facing a claim that does not arise under the Constitution or the laws of the United States, a federal court must apply the substantive law of the forum in which it sits, including that state's conflict-of-laws provisions." *Dykes v. DePuy, Inc.,* 140 F.3d 31, 39 (1st Cir. 1998) (citing *Klaxon v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). The leading case in Massachusetts on conflict of laws is *Bushkin Associates, Inc. v. Raytheon Co.,* 393 Mass. 622, 473 N.E.2d 662 (1985). *See, e.g., Millipore Corp. v. Travelers Indem. Co.,* 115 F.3d 21, 30 (1st Cir.1997) (applying *Bushkin*). Rejecting the proposition that the choice of law question should turn on where a contract was entered, the Supreme Judicial Court instead applied a "functional choice-of-law approach that responds to the interests of the parties, the States involved, and the interstate system as a whole." *Bushkin,* 393 Mass. at 631, 473 N.E.2d 662. The Supreme Judicial Court turned to the factors set forth in the Restatement (Second) of Conflict of Laws for guidance. *Id.* at 632, 473 N.E.2d 662. These include:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6(2) (1971). With respect to contract actions in general, the Restatement provides:

(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189–199 and 203.

*Id.* § 188.

The *Bushkin* court rejected a mechanical approach that would simply quantify the number of contacts listed in Section 188, choosing instead "to emphasize the choice-influencing factors listed in § 6(2) of the Restatement (Second) of Conflict of Laws, quoted above." 393 Mass. at 634, 473 N.E.2d 662. Where the relevant considerations and contacts are nearly balanced, *Bushkin* advises courts to look to the expectations of the parties. *See id.* at 635, 473 N.E.2d 662.

■ A straight-forward application of the factors set forth in Restatement Section 188 sheds little light on which state has the most significant relationship to the third-party contract claims and counterclaims presented in this litigation. The Mutual Release was negotiated at meetings in Florida and South Carolina and by telephone from Louisiana, South Carolina, and Mississippi. The Mutual Release, Memorandum of Understanding, and side affidavit were all originally drafted by the Castano Group in Louisiana. Mr. Rice and the Castano Group also executed the Mutual Release in Louisiana. Furthermore, the Castano Group has its principal place of business in Louisiana, and twenty-three of the fifty-six lawyers and law firms that compose the Castano Group have their principal places of business in Louisiana. Daynard and Third–Party Defendants Richard Sandman and Rodman, Rodman & Sandman, P.C., however, all hail from Massachusetts. Finally, Ness Motley is a South Carolina law firm and has an office in Louisiana, and Scruggs has its principal place of business in Mississippi.

If sheer number of contacts were dispositive, then Louisiana probably would have prevailed by a narrow margin over Massachusetts, South Carolina, and Mississippi. *Bushkin,* however, explicitly rejects this mechanical approach, placing greater emphasis on the interests of the parties, the states involved, and the interstate system as a whole. *See* 392 Mass. at 634, 467 N.E.2d 188.

This Court has previously held that "[t]he needs of a system of interstate commerce include flexibility, predictability, and certainty, as well as fairness of interpretation, in contracting." *Daynard III,* 188 F.Supp.2d at 122. Contracting parties from two or more states should be able to enter into a mutual agreement without

fear that an unexpected forum's law will apply to their contract, yielding unintended results. Although this Court has held that "[l]ooking to the law of the place where services are to be provided ... better meets the needs of an interstate system because where the services are provided bears a closer relationship to the totality of the parties expectations than does the merely fortuitous location of execution," *id.*, Louisiana is much more than just a fortuitous location in this context. Not only was the contract executed in Louisiana, but it was negotiated and drafted there as well by citizens of Louisiana. Looking to the place of performance only serves to expand the number of interested states: Castano Group members from across the country, including Louisiana and Massachusetts, allegedly released their claims under the Mutual Release; Ness Motley agreed to assist in the preparation of the Davis–Ellis fee arbitration from South Carolina; and Scruggs agreed to assist in the arbitration from Mississippi. Under these circumstances, the Court determined that the parties reasonably should have expected Louisiana law to govern the construction of the Mutual Release and Memorandum of Understanding.

*Bushkin* and Section 6(2) of the Restatement also direct this Court to consider the relevant interests of the various states involved. 393 Mass. at 631–32, 473 N.E.2d 662. Clearly, Massachusetts has some degree of interest in the Mutual Release: Daynard, Richard Sandman, and Rodman, Rodman & Sandman, P.C. are all located in Massachusetts, and are all allegedly bound to some degree by the Mutual Release. Massachusetts' interest in this case, however, seems to end there. Contrary to Ness Motley and Scruggs' contention, the facts that Daynard made phone calls to the Castano Group regarding the Mutual Release from Massachusetts and filed suit against Ness Motley and Scruggs in Massachusetts do not contribute significantly

to Massachusetts' interest in the Mutual Release. Furthermore, Massachusetts bears no relationship with the Davis–Ellis case, the subject matter of the Memorandum of Understanding. The interests of the remaining states—Louisiana, South Carolina, and Mississippi—appear evenly balanced. Louisiana has a strong interest in applying its law to the interpretation of a contract negotiated, drafted, and executed in Louisiana by citizens of Louisiana. The Mutual Release affects the Castano Group and a number of lawyers and law firms in Louisiana, and it also releases claims stemming, in part, from work done in Louisiana. Although neither party advocated the application of South Carolina or Mississippi law, both of these states have significant interests in this litigation given that the contract at issue was negotiated from South Carolina and Mississippi by citizens of South Carolina and Mississippi, and that arbitration assistance required under the contract was performed within their borders. At a minimum, these state considerations made clear to this Court that the interests of Louisiana surpass those of Massachusetts and are at least equal to those of South Carolina and Mississippi.

Each of these interested states, of course, has a strong policy interest in enforcing contracts and in protecting its citizens against unintended contractual obligations. More specifically, Louisiana, Massachusetts, Mississippi, and South Carolina all enforce settlement agreements between parties and interpret them according to the parties' stated intent. *See, e.g., Brown v. Drillers, Inc.,* 630 So.2d 741, 748 (La.1994); *Schuster v. Baskin,* 354 Mass. 137, 140–41, 236 N.E.2d 205 (1968); *Royer Homes of Miss., Inc. v. Chandeleur Homes,* 857 So.2d 748, 752–53 (Miss.2003); *Gardner v. City of Columbia Police Dep't,* 216 S.C. 219, 57 S.E.2d 308 (1950). Therefore, the relevant policies of the forum and

the other interested states with regard to the enforcement of settlement agreements and the interpretation of contracts generally are equally balanced and in harmony.

Section 6(2) also directs this Court to consider the ease of application of the law of the various states. The parties did not cite, and this Court's research did not reveal, any reason to believe that any one forum discussed herein is obviously favored by the ease-of-application factor.

The final Section 6(2) factor protects the justified expectations of the parties. This Court assumed that the parties expected the Mutual Release and the Memorandum of Understanding to be enforced and interpreted according to the parties' common intent. As explained above, Louisiana, Massachusetts, Mississippi, and South Carolina all enforce settlement agreements and interpret contracts generally to discern the parties' intent. This consideration, therefore, is balanced across all four states. Of the four interested states, however, Massachusetts seems the least expected forum. Although the parties may have known at the time of contracting that three Castano Group members resided in Massachusetts, it appeared doubtful that they actually expected Massachusetts law to apply to the construction of a contract negotiated, executed, and largely performed outside Massachusetts by non-Massachusetts citizens. Accordingly, the Court concluded that Massachusetts least conforms with the justified expectations of the parties, and that Louisiana is at least equally favored by the final Section 6(2) factor as South Carolina and Mississippi.

Having considered all of the factors articulated by the Restatement and endorsed by the Supreme Judicial Court in *Bushkin* for determining which state should supply the governing law in a legal dispute generally and a contract dispute specifically, this Court held that Louisiana has a greater interest in the contract claims between

Ness Motley and Scruggs and the Third-Party Defendants, and that therefore Louisiana law should apply.

**B. Choice of Law Analysis for the Tort Claim**

Turning to Ness Motley and Scruggs's negligent misrepresentation claim against the Third-Party Defendants, the Court observes that Massachusetts choice of law rules approach tort claims in much the same way as contract claims. When faced with a tort claim, the Supreme Judicial Court has applied *Bushkin's* functional approach and looked to Restatement (Second) of Conflict of Laws §§ 6 and 145 for guidance. *Cosme v. Whitin Mach. Works, Inc.*, 417 Mass. 643, 646, 632 N.E.2d 832 (1994). With respect to tort actions in general, the Restatement provides:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement, *supra,* § 145.

In this case, the relevant contacts under Section 145 are split amongst the interest-

ed states. The injury complained of, namely the cost of defending and settling Daynard's lawsuit, occurred in Massachusetts. The conduct that allegedly caused injury to Ness Motley and Scruggs, namely the Castano Group's alleged misrepresentation that the group had the authority to release its members' individual claims, occurred in Louisiana.[1] The parties are from Louisiana, Mississippi, and South Carolina, and their relationship does not seem to be centered on any one state.

Although Ness Motley and Scruggs advocated for the application of Massachusetts law and the Third–Party Defendants pushed for Louisiana law, neither party analyzed the negligent misrepresentation claim under *Bushkin's* functional approach or under Section 6(c). In the absence of any briefing on this issue, the Court nevertheless performed the Section 6(c) analysis, paying particular attention to the two states preferred by the parties.

First, this Court considered the needs of the interstate system. Here, considerations of predictability, certainty, and fairness militate toward the application of Louisiana, Mississippi, or South Carolina law over Massachusetts law. Massachusetts, if deemed to be the location of the injury in this case, is seemingly a fortuitous forum. Ness Motley and Scruggs alleged that the Castano Group misrepresented that it had the authority to release its individual members' claims, not just Daynard's in particular. Individual members of the Castano Group hail from states across the country. That Daynard happened to be the first Castano Group member to bring an individual claim and that he happened to bring it in Massachusetts

was not given very much weight by this Court. Furthermore, neither the Castano Group, nor Ness Motley and Scruggs, is from Massachusetts, and the alleged misrepresentations at issue were not made in Massachusetts. This Court determined that as between the two states advocated by the parties in this case, Louisiana favors the needs of the interstate system over Massachusetts.

Next, the Court reviewed the relevant policy interests of the states involved and the states' interests in the determination of the negligent misrepresentation claim. In general, each state has an interest in protecting its citizens and those who do business within its borders from injury caused by the misrepresentations of others. More specifically, both Louisiana and Massachusetts provide similar causes of action in tort for negligent misrepresentation. *See, e.g., Daye v. General Motors Corp.,* 720 So.2d 654, 659 (La.1998); *Golber v. BayBank Valley Trust Co.,* 46 Mass. App.Ct. 256, 257, 704 N.E.2d 1191 (1999). The interest of Massachusetts, however, is not at stake in this litigation. The alleged tortfeasor in this case, the Castano Group, is not from Massachusetts, but rather from Louisiana. The contract negotiations during which the alleged misrepresentations took place occurred in states other than Massachusetts, including Louisiana, Mississippi, and South Carolina. Furthermore, Ness Motley and Scruggs, the alleged tort victims, are not from Massachusetts, but rather from South Carolina and Mississippi. Accordingly, this Court held that as between Louisiana and Massachusetts, the interests of the former outweigh

---

1. Ness Motley and Scruggs argued that the conduct causing their injury was Daynard's filing of his lawsuit in Massachusetts. Defs. /Third–Party Pls.' Summ. J. Opp'n at 8. This argument is inconsistent with their negligent misrepresentation claim, in which they seek to prove that the Castano Group's alleged misrepresentations caused them injury. Given the nature of their tort claim, the conduct at issue for choice of law purposes should be the alleged misrepresentation and not the filing of the lawsuit.

those of the latter in the adjudication of Ness Motley and Scruggs' tort claim.

The justified expectations of the parties were also considered by the Court. There is no reason in this case to presume that when the Castano Group allegedly made misrepresentations to Ness Motley and Scruggs in Louisiana that allegedly caused Ness Motley and Scruggs—two non-Massachusetts firms—to suffer pecuniary losses, the parties justifiably expected that the law of Massachusetts would apply to the tort. As previously discussed, it was simply fortuitous that Daynard, a Massachusetts resident, was the first member of the Castano Group to bring an individual claim against Ness Motley and Scruggs. It is unreasonable to suppose that Ness Motley and Scruggs justifiably expected to have a right to the benefits of Massachusetts law in the event that the Castano Group's alleged representations to them turned out to be untrue. Under the circumstances of this case, the Court concluded that the parties reasonably expected, or at least would not be surprised, that Louisiana law, rather than Massachusetts law, would apply to the negligent misrepresentation claim.

In addition, this Court considered the certainty, predictability, and uniformity of result. Where the location of the alleged injury is fortuitous, as it is in this case, this Court found it reasonable to turn to the location where the conduct complained of took place, the state where the parties' relationship is centered, and the place of business of the parties. These considerations clearly favor Louisiana, Mississippi, or South Carolina, over Massachusetts.

The Court finally considered the ease of determination and application of the law to be applied. Again, the parties did not cite, and this Court's research did not reveal, any reason to conclude that one state is obviously favored under this criteria. Furthermore, given that both Louisiana and Massachusetts have clearly outlined the elements of a negligent misrepresentation claim in their respective jurisdictions,[2] this Court anticipated no difficulty in applying either law.

Having reviewed the various choice-influencing considerations set forth in *Bushkin* and the Restatement, this Court ultimately concluded that Louisiana law should apply to Ness Motley and Scruggs' negligent misrepresentation claim.

## IV. CONCLUSION

For the foregoing reasons, the Court held that Louisiana contract and tort law control the third-party claims and counterclaims in this litigation.

2. *See Daye v. General Motors Corp.*, 720 So.2d 654, 659 (La.1998) ("Plaintiff must prove that the conduct in question was a cause-in-fact of the resulting harm, the defendant owed a duty of care to the plaintiff, the requisite duty was breached by the defendant and the risk of harm was within the scope of protection afforded by the duty breached."); *Golber v. Baybank Valley Trust Co.*, 46 Mass.App.Ct. 256, 257, 704 N.E.2d 1191 (1999) ("In order to recover for negligent misrepresentation ... plaintiff[s] must prove that the defendant (1) in the course of his business, (2) supplie[d] false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance upon the information, and [that he] (6) ... fail[ed] to exercise reasonable care or competence in obtaining or communicating the information." (internal quotation marks omitted) (alterations in original)).